IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| KYLE W. MALBONE, ) | |
| o.b.o. KAREN M. ALSALEH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 3:10CV575 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Kyle W. Malbone, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his mother's, Karen M. Alsaleh, applications for Social Security Disability ("DIB") and Supplemental Security Income payments ("SSI"). The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 6) and motion to remand (docket no. 7) be DENIED; that

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

Defendant's motion for summary judgment (docket no. 9) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI and DIB on April 28, 2006, claiming disability due to bipolar disorder and chronic back and knee pain, with an alleged onset date of January 6, 2006. (R. at 111-20, 127, 131.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 75-76, 79-81; 77-78, 85-88.) On April 23, 2008, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 41-74.) On July 22, 2008, the ALJ denied Plaintiff's application, finding that prior to May 19, 2008 she was not disabled under the Act where, based on her age, education, work experience and residual functional capacity, there are jobs she could perform which exist in significant numbers in the national economy. (R. at 11-22.) However, the ALJ found Plaintiff disabled as of May 19, 2008. (R. at 11-22.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-3.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits prior to May 19, 2008 supported by substantial evidence on the record and the application of the correct legal standard?

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

### III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270

F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. ⸹ 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. ⸹ 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[4] based on an assessment of the claimant's residual functional capacity ("RFC")[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. at 13.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of major depressive disorder, morbid obesity, obstructive sleep apnea, lumbar degenerative disc disease, left knee degenerative joint disease, chronic obstructive pulmonary disease, hypertension, and diverticulitis, but that prior to May 19, 2008 these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 13-16.) The ALJ next determined that, prior to May 19, 2008, Plaintiff had the RFC to perform sedentary work, except that she was limited to simple, unskilled jobs with minimal interaction with the general public. (R. at 16-19.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform her past relevant work because of the levels of exertion required in each position. (R. at 19.) At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform prior to May 19, 2008. (R. at 19-20.) Accordingly, the ALJ concluded that Plaintiff was not disabled prior to May 19, 2008 and was employable such that she was not entitled to benefits before that date. (R. at 20-22.) The ALJ then determined that commencing on May 19, 2008, the severity of Plaintiff's major depressive disorder satisfied the requirements of Listing 12.04, such that she was disabled and entitled to benefits as of that point in time. (R. at 20-22.)

Plaintiff moves for a finding that she is entitled to benefits as of January 6, 2006, her alleged onset date, as a matter of law; or, in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of her position, Plaintiff argues that the disability onset date selected by the ALJ was arbitrary. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 5-10.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 18-31.)

### A. The disability onset date selected by the ALJ was not arbitrary.

Plaintiff contends that, as in Bailey v. Chater, 68 F.3d 75 (4th Cir. 1995), the ALJ improperly linked Plaintiff's onset of disability date to the date of a consultative examination. (Pl.'s Mem. at 6.) Plaintiff asserts that Dr. Brown, the consulting examiner, provided evidence that supported the alleged onset date of January 6, 2006, and that the ALJ erred in not crediting his opinion in that regard. (Pl.'s Mem. at 7-8.) Plaintiff further alleges that there is no evidence of record that supports the ALJ's finding of the "fantastic coincidence" that Plaintiff's mental impairments had little or no effect on the occupational base prior to May 19, 2008, but that Plaintiff's mental impairments were severe enough to satisfy the requirements of a Listing beginning on May 19, 2008, the date of the consulting examination.[6] (Pl.'s Mem. at 9-10.)

SSR 83-20 provides that the onset date must have a legitimate medical basis. If the onset date must be inferred, SSR 83-20 states that the ALJ should enlist the services and opinion of a medical advisor. The Fourth Circuit has affirmed the principle in Bailey v. Chater, in which it held that the use of a medical advisor is necessary where the onset date is ambiguous. 68 F.3d at

---

[6] Plaintiff does not challenge the ALJ's findings regarding her physical impairments. Accordingly, the Court will only consider Plaintiff's mental impairments.

79.  However, the Court also noted that SSR 83-20 does not expressly mandate that an ALJ must consult a medical advisor in every case where the onset of disability is only inferred.  Id. at 79.  In Bailey, the Fourth Circuit determined that the ALJ's decision to award benefits as of six months prior to the consultative examinations was, in essence, "wholly arbitrary" where it was not supported by substantial evidence.  Bailey, 68 F.3d at 80.  The appellate court found an "absence of clear evidence documenting the progression of Bailey's condition," ruling that the ALJ did not have the discretion to proceed without a medical advisor.  Id. at 79.

As noted, in Bailey the ALJ decided to award benefits as of six months *before* the consultative examinations, which is what made the decision arbitrary and therefore improper.  In this case, the ALJ awarded benefits as of the date of the consultative examination, as it was the first evidence of record in which Plaintiff demonstrated symptoms severe enough to preclude her from working.  Though Plaintiff characterizes the decision as a "fantastic coincidence," Plaintiff appears to overlook the fact that the burden of proving disability remains with Plaintiff at this juncture of the disability analysis.  The burden does not shift to Defendant until the final step of the analysis, in which he must prove that there are occupations that exist in significant numbers that Plaintiff can perform.  As the burden lies with Plaintiff, it is Plaintiff's duty to present evidence that she was disabled prior to May 19, 2008, the date of the consultative examination.  Substantial evidence supports the ALJ's decision that Plaintiff has not satisfied this burden.

Dr. Brown, the consultative examiner, labeled Plaintiff a "fairly reliable historian;" opined that her symptoms were consistent with medical history and treatment as it is known; and noted that Plaintiff's limitations were first present in 2005, when she left her occupation as a dog groomer.  (R. at 391-402.)  Plaintiff submits that such a statement is "exactly the type of evidence" the Fourth Circuit determined was necessary in establishing a disability onset date,

8

and that the ALJ "ignored" the statement. (Pl.'s Mem. at 7-8.) However, even if Plaintiff's symptoms were present since 2005 when she left her occupation as a dog groomer, that does not necessarily mean that such symptoms were not controlled at any time between 2005 and the determined onset date of May 19, 2008. Indeed, Plaintiff worked at a convenience store after she left her position as a dog groomer, and she does not allege a disability onset date until January 6, 2006. Moreover, Plaintiff has repeatedly noted that she left[7] the convenience store position because of her physical difficulties, rather than any mental deficiencies. (R. at 131, 391.) Plaintiff also stated to Dr. Brown that she had been on the medication Effexor for several years, and that the medication had helped her depression, but that she recently stopped taking the medication because she could no longer afford it. (R. at 395.) Plaintiff also stated that she was now on the medication Paxil, which was not effective in controlling her symptoms. (R. at 395.) Indeed, Plaintiff submits in her memorandum that her primary care physician referenced depression and treatment with Effexor on several occasions between September 2005 and December 2007. (Pl.'s Mem. at 8-9, R. at 236, 252-54, 283, 341-42, 350, 357, 374-78, 389.) It is reasonable to conclude that sometime after Plaintiff stopped taking Effexor, which she admitted was effective, her symptoms worsened to a point where she was no longer capable of performing substantial gainful activity.

---

[7] It is unclear whether Plaintiff voluntarily left the position at the convenience store or if she was terminated. The record demonstrates that Plaintiff noted on some occasions that she voluntarily left, and on others that she was terminated because she could not perform the physical requirements of the position. (R. at 49, 131, 391.) Further, it is unclear when this employment actually occurred. Plaintiff told the ALJ at the hearing that she had not worked at all in 2006, yet when she was hospitalized on January 30, 2006, she told physicians that she recently stopped grooming dogs but had found another job. (R. at 49, 223.) Plaintiff also noted on a work background report that she worked at the convenience store from April 2006 to June 2006. (R. at 183.)

Moreover, though Dr. Brown found Plaintiff to be a "fairly reliable historian," many of her statements do not coincide with other evidence of record. For example, Plaintiff told Dr. Brown that she had attended therapy once a week for six months; though she was unsure of the year, she did say that she was supposed to attend such sessions with her son, but that he only attended two. (R. at 393.) However, the record reflects that Plaintiff attended one individual therapy session during the relevant period in March 2006, and that she withdrew against the advice of the staff. (R. at 228-29, 236-42.) Plaintiff also reported to Dr. Brown that she was seeing a psychiatrist once a month for medication management at a mental health clinic, but there is no evidence of record to support this allegation. (R. at 393-94.) Plaintiff also told Dr. Brown that she was hospitalized in January 2008 because of anxiety attacks; however, records of such hospitalization demonstrate complaints of chest pain and do not mention depression or anxiety. (R. at 351-73, 392-93.) Plaintiff also told Dr. Brown that her second marriage resulted in divorce in 1996; however, the record reflects that Plaintiff mentioned on other instances that she remained married to her second husband, though they were not together, because she did not want to deal with the expense of a divorce. (R. at 224, 233, 237, 368, 383, 391, 394.) Such inconsistencies cast doubt on the veracity of Plaintiff's accounts of her social and medical history. Further, when Plaintiff sought treatment for chest pain in September 2006, physicians noted that Plaintiff was a "poor historian." (R. at 303.)

Plaintiff essentially argues that Dr. Brown's one-time examination, and his opinion that Plaintiff's limitations had existed since 2005, is sufficient evidence to satisfy her burden of proving that she was disabled as of January 6, 2006. However, this Court cannot ignore the entirety of the record, which demonstrates that while Plaintiff was treated for depression, she did not pursue recommended therapy sessions, she did not visit a psychiatrist or psychologist, nor

did her treatment for the condition ever extend beyond the prescription of Effexor by her primary care physician. The Court notes that Plaintiff was hospitalized in January 2006 for a medication overdose, which may or may not have been a suicide attempt, and that she attended one counseling session in March 2006. (R. at 216-27, 228-29, 236-42.) However, apart from these two circumstances,[8] and notes from her primary care physician that she was regularly on the medication Effexor, there is no evidence demonstrating that Plaintiff's depression was so severe to preclude her from performing work activity. Physicians also noted on several occasions between February 2006 and January 2008 that Plaintiff was "alert and oriented times three" and had normal mood and affect. (R. at 18, 285, 314, 321.) Plaintiff also reported to Dr. Brown on May 19, 2008 that she had suicidal ideations; Plaintiff had not reported such ideations in the past. (R. at 223, 234, 239, 394.) Furthermore, state agency physicians opined on June 23, 2006 and December 11, 2006 that Plaintiff was capable of performing the mental demands of unskilled work, despite the limitations resulting from her mental disorders. (R. at 266-82, 333.)

The ALJ also noted that Plaintiff's written statements for the record were inconsistent with her testimony and alleged level of disability prior to May 19, 2008.[9] (R. at 18.) In May 2006, Plaintiff reported that she socialized "all the time" with others; that she talked with others,

---

[8] Plaintiff also references a visit to a therapist in August 2004; however, such treatment record is outside of the relevant period, as Plaintiff did not allege disability until January 6, 2006. (R. at 230-35.) The Court also notes that Plaintiff only attended one session in August 2004, and subsequently "dropped out" of services. (R. at 230-31.)

[9] Plaintiff has not challenged the ALJ's finding regarding her credibility. Plaintiff does note that the ALJ stated that Plaintiff was able to maintain her work routine, concentrate on work assignments, and get along with supervisors and co-workers "in November 2007 and March 2008." (Pl.'s Mem. at 5.) Plaintiff clarifies that she was referring to her ability to perform work activities while she was working. It is unclear whether the ALJ meant that Plaintiff possessed these capabilities in November 2007 and March 2008, or that Plaintiff possessed those capabilities when she worked in the past and the dates referenced merely indicate when Plaintiff provided the information. Regardless, the Court is not persuaded that such a statement constitutes reversible error.

played games, and watched television; that she went to church and to the park with her children; that she felt depressed and alone; and that she did not handle stress well. (R. at 151-54.) In November 2007, Plaintiff reported that her attention span had diminished; that she had lost enjoyment in her hobbies; that she was afraid to be in crowded places; that she did not like to be around people and did not socialize; that she was physically unable to maintain work; that she went grocery shopping once a week; and that she seldom watched television or read. (R. at 173-76.) In March 2008, Plaintiff reported that she watched television "most all day;" that she read mystery books; that she suffered from anxiety; and that her family and friends visited occasionally. (R. at 185-88.) At the hearing before the ALJ on April 23, 2008, Plaintiff testified that she had not had any psychiatric treatment since 2006; that her medication overdose which resulted in hospitalization in January 2006 was not a suicide attempt, but rather a "mix-up" in her medications; that she was not suicidal in January 2006 and her depression is about the same as it was then; that she had crying spells more than once a week; that she was very anxious if she had to go out in public; that she cut herself to make her son and boyfriend stop fighting; and that her breathing and back issues were the worst of her problems. (R. at 60-72.)

The ALJ accounted for Plaintiff's depression, anxiety, and alleged problems with attention by limiting her to simple, unskilled work entailing only minimal interaction with the general public. (R. at 16-19.) Though Plaintiff alleged that she suffered significant deterioration in her attention and concentration, her statements regarding such are inconsistent. While Plaintiff reported in November 2007 that she seldom watched television or read books because her attention and concentration were so poor, in March 2008 Plaintiff reported that she read mystery books and watched television "most all day." (R. at 173-76, 185-88.) Even so, the ALJ credited the allegation and limited Plaintiff to simple, unskilled work. Plaintiff reported anxiety

12

when she went out in public, which the ALJ credited by limiting her to work entailing only minimal interaction with the general public. Accordingly, the ALJ found that Plaintiff was not disabled before May 19, 2008 because a limitation to simple, unskilled work entailing only minimal interaction with the general public has little to no effect on the occupational base of sedentary work.[10] See SSR 85-15; 96-9p.

Finally, Plaintiff's argument that it is irrational to conclude that Plaintiff was disabled on May 19, 2008, but not before, "fails to appreciate how the sequential evaluation process operates." Pugh v. Bowen, 870 F.2d 1271, 1277 (7th Cir. 1989.) Indeed, the same argument could apply to Plaintiff's alleged onset date of her disability. See Pugh, 870 F.2d at 1277 n.7 ("When one employs the same reasoning with regard to [plaintiff's] allegation that he became totally disabled upon the day he left his job...one might characterize [his] contention similarly."). The ALJ did not "arbitrarily" select an onset date; instead, he considered all of the evidence of record before selecting a date that had a sufficient medical basis. The "fantastic coincidence" that Plaintiff's onset date coincides with the date of the consultative examination can be attributed to the lack of evidence Plaintiff has submitted to support an earlier onset date. As noted earlier, it is Plaintiff's burden to present evidence that she was disabled before May 19,

---

[10] If a claimant suffers from both exertional and nonexertional limitations, then the ALJ must consult the Grids first to determine whether a rule directs a finding of disabled based on the strength requirement alone. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, § 200.01(e)(2). If a rule directs a finding of "not disabled" based on the strength requirement (i.e., the claimant is limited to light work and meets one of the categories in rule 202.10), then the ALJ cannot utilize the Grids; instead, a VE must be utilized to take into account the effects of the claimant's nonexertional and exertional limitations and the claimant's RFC to determine whether there are jobs existing in significant numbers in the national economy that the claimant can perform. Walker, 889 F.2d 49-50.

It is important to note, however, that "not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids." Walker, 889 F.2d at 49 (citing Grant v. Schweiker, 699 F.2d 189 (4th Cir. 1983)). The ALJ must inquire whether the nonexertional condition affects the claimant's RFC to perform work of which the claimant is exertionally capable. Id.

2008. She has not satisfied this burden. Accordingly, it is the Court's recommendation that the ALJ's decision is supported by substantial evidence and application of the correct legal standard, and should be affirmed.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 13) and motion to remand (docket no. 14) be DENIED; that Defendant's motion for summary judgment (docket no. 18) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
DENNIS W. DOHNAL
UNITED STATES MAGISTRATE JUDGE

Date: July 6, 2011
Richmond, Virginia