UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

KYLE W. MALBONE
*on behalf of* Karen M. Alsaleh,

                              Plaintiff,

      v.                                    Action No. 3:10-CV-575

MICHAEL J. ASTRUE,
*Commissioner, Social Security Administration*,

                              Defendant.

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Kyle W. Malbone's objections to Judge Dohnal's Report and Recommendation ("R&R") affirming the Social Security Administration's ("SSA") denial of his mother's applications for Social Security Disability ("DIB") and Supplemental Security Income ("SSI") payments. (Doc. No. 13.) The Commissioner of the Social Security Administration's ("Commissioner") decision to deny benefits is based on a finding by an Administrative Law Judge ("ALJ") that the claimant was not disabled as defined by the Social Security Act and applicable regulations prior to May 19, 2008.

For the reasons stated below, Court OVERRULES Malbone's objections and ADOPTS Judge Dohnal's R&R (Doc. No. 12) DENYING Malbone's Motion for Summary Judgment or, in the Alternative, Motion for Remand (Doc. Nos. 6 and 7), GRANTING the Commissioner's Motion for Summary Judgment (Doc. No. 9), and AFFIRMING the decision denying benefits.

**I.    BACKGROUND**

An ALJ conducts a five-step analysis to determine if a claimant is eligible for disability benefits. 20 C.F.R. §§ 416.920(a)(4), 404.1520(a)(4). The ALJ considers whether

an applicant (1) is performing substantial gainful activity ("SGA"); (2) is severely impaired; (3) has an impairment that meets or medically equals one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 and lasts or is expected to last for twelve months or result in death; (4) could continue performing work she performed in the past; and (5) could perform other jobs in the national economy. 20 C.F.R. §§ 416.905(a), 416.920(a)(4). See also Rogers v. Barnhart, 216 F. App'x 345, 347–48 (4th Cir. 2007). If, at any step of the analysis, the ALJ is able to determine the applicant is disabled, the inquiry must cease. 20 C.F.R. § 404.1520(a)(4). The applicant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner if the analysis reaches step five. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

This matter is brought by Kyle W. Malbone ("Malbone") on behalf of his mother Karen M. Alsaleh ("Alsaleh"). Alsaleh is the deceased claimant and Malbone is the substituting party pursuing benefits on her behalf. Alsaleh protectively filed for SSI and DIB claiming disability due to bipolar disorder and chronic back and knee pain, with a purported onset date of January 6, 2006. (R. at 111-20, 127.)

The ALJ found at step one that Alsaleh had not engaged in SGA since January 6, 2006, the alleged disability onset date. At step two, the ALJ found that, since the alleged disability onset date, Alsaleh had the following severe impairments: major depressive disorder; morbid obesity; obstructive sleep apnea; lumbar degenerative disc disease; left knee degenerative joint disease; chronic obstructive pulmonary disease; hypertension; and diverticulitis. The ALJ found at step three, however, that prior to May 19, 2008, Alsaleh did not have an impairment that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ also determined that, prior to May 19, 2008,

Alsaleh had the residual functional capacity ("RFC") to perform sedentary work, except she was limited to simple, unskilled jobs with minimal interaction with the general public.

At step four, the ALJ found that, prior to May 19, 2008, Alsaleh could not perform her past relevant work, which required frequent interaction with the general public. Finally, at step five, after considering Alsaleh's age, education, work experience, and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that Alsaleh could have performed prior to May 19, 2008. The ALJ concluded Alsaleh was not disabled prior to May 19, 2008, but became disabled on that date and continued to be disabled through the date of his decision.

Malbone sought judicial review of the ALJ's decision, arguing the ALJ's finding Alsaleh's disability onset date was May 19, 2008, the date of her consultative psychological examination, was arbitrary. Judge Dohnal found the ALJ's determination that Alsaleh became disabled on May 19, 2008, was supported by substantial evidence and application of the correct legal standard. Accordingly, the R&R recommends that this Court deny Malbone's Motion for Summary Judgment, grant the Commissioner's Motion for Summary Judgment, and affirm the decision denying Alsaleh benefits prior to May 19, 2008.

## II. STANDARD OF REVIEW

The Court may review a denial of benefits by the Commissioner, 42 U.S.C. § 405(g), but must accept the Commissioner's findings of fact if they are supported by substantial evidence and were reached by applying the correct legal standard, Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006) (internal quotation marks and citation omitted). The "substantial evidence" standard is more demanding than the "scintilla" standard, but less demanding than the "preponderance" standard. Mastro v. Apfel, 270 F.3d 171, 176 (4th

Cir. 2001). A finding is supported by substantial evidence if it is based on "'relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion.'" Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). In reviewing for substantial evidence, the Court may not weigh conflicting evidence, evaluate credibility, or substitute its judgment for that of the Commissioner's. Mastro, 270 F.3d at 176.

### III.   DISCUSSION

Malbone objects to Judge Dohnal's finding that the burden of proving disability remained with him and Judge Dohnal's analysis of Bailey v. Chater, 68 F.3d 75 (4th Cir. 1995), and Social Security Ruling ("SSR") 83-20.

   a. <u>The Claimant Bears the Burden of Proving Disability</u>

Malbone objects to the R&R statement

> Plaintiff appears to overlook the fact that the burden of proving disability remains with Plaintiff at this juncture of the disability analysis. The burden does not shift to Defendant until the final step of the analysis, in which he must prove that there are occupations that exist in significant numbers that Plaintiff can perform.

(R&R at 8.) Malbone contends this case was decided at the fifth stage of the sequential analysis discussed above. Accordingly, he believes the burden shifted to the Commissioner to demonstrate that, considering Alsaleh's age, education, work experience, and RFC, she was capable of performing work available in significant numbers in the national economy.

The Commissioner argues Malbone has the burden of proving the alleged onset date of disability chosen by the Commissioner is not supported by substantial evidence. The Commissioner argues Malbone failed to proffer credible evidence that Alsaleh had work-

4

preclusive limitations prior to May 19, 2008, and his attempt to fault the Commissioner for his failure to prove disability should be rejected.

The claimant bears the burden of proving disability. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). See also 42 U.S.C. § 423(d)(5)(A) ("[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.704 ("[w]hen evidence is needed to prove your eligibility or your right to continue to receive benefit payments, you will be responsible for obtaining and giving the evidence to us."). It is not until the claimant makes a prima facie showing that impairments preclude her from returning to her past work that the burden shifts to the Commissioner to prove there are jobs in the national economy that the claimant can perform. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden of proving Alsaleh was disabled prior to May 19, 2008, therefore, rested with Malbone. Accordingly, Malbone's objection to Judge Dohnal's statement that the burden of proving disability remained with him is overruled.

    b. <u>There is Substantial Evidence in the Record to Support the Conclusion that Alsaleh's Disability Onset Date was May 19, 2008</u>

Malbone objects to Judge Dohnal's analysis of Bailey and SSR 83-20 and questions whether these authorities required the ALJ to enlist the services and opinion of a medical advisor to infer Alsaleh's disability onset date. Malbone states Judge Dohnal interpreted Bailey to mean the ALJ's decision in that case would not have been arbitrary if the ALJ had found the claimant disabled as of the date of the consultative evaluation. Malbone states this is an incorrect analysis. Malbone maintains the issue in Bailey was whether the claimant's onset date should have been earlier than six months prior to the consultative examination. Malbone states the ALJ's decision in Bailey was fairer than the decision in the

5

instant case because the ALJ in <u>Bailey</u> did not conclude the claimant's impairments arose to a disabling level as of the date of the consultative evaluation. Malbone argues the ALJ in <u>Bailey</u> recognized the unlikelihood that the claimant's condition progressed to a level of disabled on the day of the consultative examination, and the ALJ's moving the onset date to six months before the consultative examination gave the claimant the benefit of any doubt. Finally, Malbone states, absent clear evidence documenting the progression of Alsaleh's condition, the ALJ should not have forgone consultation with a medical advisor. Because the ALJ found Alsaleh's disability onset date was the date of her consultative evaluation without consulting a medical advisor, Malbone believes the decision was arbitrary.

The Commissioner states Malbone's argument that the ALJ wrongfully failed to obtain medical advisor testimony is without merit because the evidence regarding when Alsaleh became disabled was not ambiguous and the ALJ did not arbitrarily select an onset date. Instead, the ALJ chose a date with a sufficient medical basis after considering all the evidence in the record.

The Commissioner states the record in this case provides clear and unambiguous evidence documenting the progression of Alsaleh's condition. The medical evidence demonstrates Alsaleh did not have disabling limitations prior to May 19, 2008. Specifically, before May 19, 2008, Alsaleh had very little psychiatric treatment and no treating physician or mental health provider offered an opinion of disability in support of her claim. The record shows Alsaleh received prescriptions for an antidepressant from her family physician, but there is no evidence that he referred her for mental health treatment or even recommended mental health treatment. The family physician did not document any mental health diagnoses or complaints after most of her visits to him. Moreover, two state agency

psychologists opined Alsaleh did not have a severe mental impairment. (R. at 266, 278.) Thus, the Commissioner believes there was overwhelming medical evidence to support the ALJ's conclusion that Alsaleh was not disabled prior to May 19, 2008.

The Commissioner next argues that, in addition to medical evidence, the ALJ reasonably found Alsaleh's activities and abilities did not support a finding of disability prior to May 19, 2008. Alsaleh was able to care for her children and perform tasks inside and outside the home before May 2008. (R. at 147-54.) Thus, the Commissioner believes the non-medical evidence supports the ALJ's onset date determination.

The Commissioner maintains the record supports a finding that Alsaleh had work-preclusive limitations on May 19, 2008. This is the date psychologist Richard J. Brown, Ph.D., examined Alsaleh. Dr. Brown diagnosed Alsaleh with major depression and generalized anxiety disorder and stated she would not be able to maintain regular attendance in the workplace or complete more than a partial workday. Her capacity to interact with coworkers and the public was marginal at that time. Dr. Brown also reported that Alsaleh had limitations in all areas of mental work-related functioning. Thus, it is clear Alsaleh's condition had deteriorated as of May 19, 2008.

Because the record contains clear evidence documenting Alsaleh's deterioration and there was unambiguous medical support for the ALJ's onset date determination, the Commissioner argues the ALJ was not required to consult a medical advisor.

SSR 83-20 provides a claimant's disability onset date must have a legitimate basis, and if it must be inferred, the ALJ should enlist the services and opinion of a medical advisor. SSR 83-20 does not, however, expressly mandate that an ALJ consult a medical advisor in every case where the disability onset is inferred. Bailey, 68 F.3d at 79. Bailey

7

requires an ALJ to consult a medical advisor if the evidence regarding a claimant's disability onset date is ambiguous. Id. ("[i]f the evidence of onset is ambiguous, the ALJ must procure the assistance of a medical advisor in order to render the informed judgment that the Ruling requires.").

There is substantial evidence in the record to support the conclusion that Alsaleh was not disabled prior to May 19, 2008. The ALJ considered the medical evidence of record as well as Alsaleh's representations regarding her daily activities in determining she was not disabled prior to May 19, 2008. With respect to her physical capabilities, an attending physician at the Medical College of Virginia noted in January 2006 that she had a normal range of motion in her extremities. (R. at 220.) In June 2006, a physician noted Alsaleh had normal gait, joints, bones, muscles, cranial nerves, and motor strength. (R. at 285.) A January 2007 chest x-ray showed no acute cardiopulmonary abnormalities. (R. at 337.) In January 2008, a physician noted Alsaleh showed "no apparent distress." (R. at 361.)

Prior to May 19, 2008, Alsaleh had undergone very little psychiatric treatment. She was briefly hospitalized in January 2006 for a medication overdose, which may or may not have been a suicide attempt. (R. at 220, 222.) She began treatment for depression in March 2006, but withdrew from services the next month. (R. at 228.) A doctor noted in June 2006 that Alsaleh had normal memory, mood, affect, judgment, and insight. She was also oriented to person, time, and place. (R. at 285.) In January 2008, a physician described Alsaleh as alert and oriented. (R. at. 358.)

Alsaleh's statements also support the conclusion that she was not disabled prior to May 19, 2008. In May 2006, Alsaleh wrote she took her children to school, did housework, picked her children up from school, and attempted to make dinner before going to bed. (R.

8

at 147-48.) She also wrote that she cared for pets; could bath, shave, and feed herself; cared for her hair; and prepared her own meals. (R. at 148-49.) In November 2007, Alsaleh reported her attention span had diminished; she no longer enjoyed hobbies; she was afraid of crowded places; she did not like to be around people and did not socialize; and seldom watched television or read. (R. at 173-76.) In March 2008, however, Alsaleh wrote she attempted to wash dishes and could go grocery shopping occasionally, as long as she used a motorized cart. (R. at 184.) She also stated she suffered from anxiety and her friends and family visited occasionally. Her activities at that time included watching television most of the day; reading books; handling her own money and paying her bills. (R. at 185-88.)

At the April 23, 2008, hearing before the ALJ, Alsaleh testified she had not had psychiatric treatment since 2006; her January 2006 hospitalization was the result of a mix-up in her medications, not a suicide attempt; and her depression at the time of the hearing was about the same as it was in 2006. She further stated she had crying spells at least once a week; was very anxious in public; cut herself to make her son and boyfriend stop fighting; and her breathing and back issues were the worst of her problems. (R. at 60-72.)

The record relied upon by the ALJ shows substantial support for finding May 19, 2008, was Alsaleh's disability onset date. On that date, Dr. Brown diagnosed her with major depression and a generalized anxiety disorder. (R. at 398.) Alsaleh told Dr. Brown she had been taking Effexor for two years and that it was effective. (R. at 395.) She discontinued the medicine because her insurance would no longer cover it. (Id.) Brown noted Alsaleh's impairments likely rendered her unable to perform simple tasks on a consistent basis and unable to "maintain regular attendance in the workplace." (R. at 397.) Dr. Brown further noted it was unlikely Alsaleh could complete more than a partial

9

workday. (Id.) This was the first medical evidence of record that indicated Alsaleh's impairments precluded her from working.

After considering all the evidence, the ALJ concluded that, beginning on May 19, 2008, Alsaleh's impairments "could reasonably be expected to produce the alleged symptoms" and her statements concerning the intensity, persistence, and limiting effects of her symptoms were credible. (R. at 21.) Because there was no ambiguity in this regard, the ALJ did not have to enlist the services and opinion of a medical advisor and Malbone's objection as to the arbitrary nature of the onset date is overruled.

## IV. CONCLUSION

Because the ALJ applied the correct legal standard and came to a conclusion supported by substantial evidence, the Court OVERRULES Malbone's objection and ADOPTS Judge Dohnal's R&R as the ruling of this Court. Accordingly, Malbone's Motion for Summary Judgment, or in the Alternative, Motion for Remand is DENIED, the Commissioner's Motion for Summary Judgment is GRANTED, and the Commissioner's decision denying benefits is AFFIRMED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this ___10th___ day of August 2011